UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

UNITED STATES OF AMERICA                          :

   -v.-                                                      :          11 Cr. 676 (RJS)

JOEL BELTRE,                                             :

       Defendant.                                    :

-----------------------------------------------------------------x


THE GOVERNMENT'S SUPPLEMENTAL SENTENCING SUBMISSION


PREET BHARARA
United States Attorney for the
  Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Alvin Bragg
Assistant United States Attorney
- Of Counsel -

The Government respectfully files this submission to supplement its original sentencing memorandum, which was filed on September 26, 2012.  In the original submission, the Government calculated a Guidelines range of 78 to 97 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment.  This calculation took into consideration the Government's view that the defendant had submitted an affidavit, in support of his motion to withdraw his plea (the "Motion"), containing several false statements denying his culpability and claiming misconduct by his prior attorneys (the "Affidavit").  Based upon these false statements, the Government concluded that the defendant was not eligible for "safety-valve" treatment, should not receive credit for acceptance of responsibility, and should have his offense level increased because he obstructed justice.

Subsequent to the Government's submission, the Court held a hearing on October 23, 2012, at which the defendant's prior attorneys, Calvin Scholar and Margaret Shalley, testified.  At the defendant's request, the Court reopened the hearing to hear testimony from the defendant.  On February 19, 2012, the defendant decided not to testify, withdrew the Motion, and indicated that he no longer is contesting that he conspired to distribute more than 100 grams of heroin.  The Court set a briefing schedule and directed the parties to address whether: (1) the defendant is eligible for the safety valve; (2) the defendant should receive credit for acceptance of responsibility; and (3) the defendant's offense level should be increased because he obstructed justice.  For the reasons stated below (and in the original sentencing submission), the Government believes that the defendant is not eligible for the safety valve or credit for acceptance of responsibility and that his offense level should be increased because he obstructed

1

justice.  Accordingly, the defendant's Guidelines range should be 78 to 97 months'

imprisonment, with a mandatory minimum term of 60 months' imprisonment.

## FACTUAL BACKGROUND

### A.      The Defendant's Guilty Plea And Motion To Withdraw His Plea

On February 24, 2012, the defendant entered a plea of guilty to conspiracy to

distribute, and possess with the intent to distribute, 100 grams and more of a mixture and a

substance containing a detectable amount of heroin, in violation of Title 21, United States Code,

Sections 846 and 841(b)(1)(B).  The defendant entered his plea of guilty pursuant to a plea

agreement, which stipulated that the defendant's Guidelines range was 46 to 57 months'

imprisonment, with a mandatory minimum term of 60 months' imprisonment.   The agreement

reserved the right for the defendant to request the Court to impose sentence without regard to the

mandatory minimum sentence, pursuant to 18 U.S.C. Section 3553(f) and related Guidelines

provisions (which are referred to as the "safety valve").

At the defendant's guilty plea proceeding, he said that he had a sufficient

opportunity to discuss the case with his attorney, and that he was satisfied with his attorney's

representation of him.  (See Docket Entry No. 168, Ex. A at 6).  The defendant went on to state,

in his guilty plea allocation, that he had conspired with other people to distribute and sell

narcotics, and that he "actually made a phone call to try to buy 104 grams of heroin."  (Id. at 39).

On April 3, 2012, however, the defendant filed the Motion and the Affidavit swearing that he

never entered into an agreement to distribute 100 grams and more of heroin.  (Docket Entry No.

168, Ex. B, ¶ 4).

The Affidavit also stated that: (1) on the day of his plea, Beltre went to Shalley's office, was immediately taken to the courthouse, and was told to enter a guilty plea; (2) he was given no advance notice of his scheduled plea; (3) Shalley did not tell him that he would be remanded after he entered his guilty plea; and (4) Shalley told him that his plea "very likely" would result in a sentence of 18 months' imprisonment.  (Docket Entry No. 168, Ex. B, ¶ 3).

The Court denied the Motion on May 2, 2012, following a conference and oral argument.  In denying the Motion, the Court noted that "virtually every assertion made in Mr. Beltre's affidavit is contradicted by statements on the record at the guilty plea." (Docket Entry No. 168, Ex. C at 2).  In light of that fact, and in light of the thoroughness with which the defendant's guilty plea was taken, the Court stated:  "I don't see how anything in this affidavit can be credited, and I think the implications for that are serious."  (Id. at 7).  The Court then concluded that:  "I think on this record I would have no choice but to take away the reduction for acceptance of responsibility.  And I think I would be likely to include an enhancement for obstruction of justice."  (Id.)

B.      **The Defendant's Efforts To Satisfy The Safety-Valve Criteria**

In August and September 2012, the defendant had two safety valve proffers with the Government.  During these proffers, the defendant admitted to talking to his co-defendant, Ismael Canales, about the purchase and sale of cocaine and heroin.  However, the defendant maintained that, as set forth in the Affidavit, he never had an agreement to distribute or possess with the intent to distribute 100 grams and more of heroin.

C.      **The October 23, 2012 Hearing**

At the hearing, the Government called Shalley and Scholar as witnesses.  Shalley testified that she: has been admitted to practice law for 28 years; practiced criminal defense at the Legal Aid Society early in her career; has been a member of the Criminal Justice Act panel in the Southern District of New York (the "CJA Panel") since 1999; and during the course of her career, has represented a couple of hundred criminal defendants in federal court, and sixty to seventy percent of these clients were charged with violating federal narcotics laws.  (Transcript of Hearing on Oct. 23, 2012, ("Tr."),  attached hereto as Exhibit A, at 6-7).

Shalley further testified that she met with Beltre ten to 12 times, and that she had between five and seven conversations with the defendant about the weight of heroin involved in the transactions in which he participated.  (Tr. 8-9).  While Beltre changed his story about the amount of weight involved in his transactions, he consistently admitted to Shalley that the weight, in total, exceeded 100 grams of heroin.  (Tr. 10).  Shalley also testified that Beltre sold heroin to two different people:

- Beltre "went to [co-defendant] Mr. Medina to try to obtain heroin.  Mr. Medina sent him to someone named Compeche, and he bought the heroin from Compeche which was then sold to a man named Lou. . . ."  (Tr. 10).

- Beltre provided more than 100 grams of heroin to a person named Hakeem, who was Beltre's sister's boyfriend, and Hakeem in turn sold that heroin in upstate New York.  (Tr. 20-21, 40).

(See also Tr. 38-39) (testifying on cross-examination that Beltre had "conspiratorial involvement" with Medina, co-defendant Ismael Canales, and "Bombie," a co-conspirator who died before the indictment was filed).

In early February 2012, Shalley, Scholar, and Beltre attended a "reverse proffer"

4

with the Government.  At the end of the proffer, the Government indicated that it would be open

to accepting a plea to a lesser included offense of violating 21 U.S.C. Section 841(b)(1)(B).  (Tr.

16).  After the proffer, Shalley explained to Beltre that if he pled guilty to the lesser included

offense, his bail would be revoked and he would be remanded.  (Tr. 17 ("[B]asically the first

thing I told him is you realize when you do that you are going to go to jail.")).  After Shalley

explained that his bail would be revoked, Beltre indicated that he nonetheless wanted to plead

guilty.  (Tr. 17).  The day after the proffer, the Government sent Shalley a plea agreement for a

plea to a conspiracy to distribute more than 500 grams of cocaine.  (Tr. 19; Government Exhibit

at Oct. 23, 2012 Hearing ("GX") 2).  Beltre told Shalley that he had not agreed to distribute more

than 500 grams of cocaine and, therefore, could not enter a plea for that offense, but he could

enter a guilty plea for agreeing to distribute more than 100 grams of heroin.  (Tr. 19).

After Shalley's discussion with Beltre, she requested a revised plea agreement

from the Government, and the Government provided Shalley with a plea agreement for a

conspiracy to distribute more than 100 grams of heroin.  (Tr. 21-22; GX 3).  Shalley reviewed

"the entire agreement" with the defendant.  (Tr. 23).  The plea agreement did not allow Beltre the

option to seek relief under the safety valve, so Shalley asked the Government for a revised plea

agreement that preserved this option for Beltre.  (Tr. 23-24).  The Government provided such a

revised plea agreement and this revised agreement became the final plea agreement (the

"Agreement").  (GX 4).

On February 17, 2012, Shalley went over the Agreement with Beltre "line by

line."  (Tr. 25).  This line-by-line review included a review of the plea agreement's provisions

that the offense involved at least 100 grams of heroin and that Beltre's sentence was to be

determined solely by the Court.  (Tr. 26).  Shalley again told the defendant that he would be

remanded when he pled guilty.  (Tr. 28).  At no point did Shalley make any promises to Beltre

about the length of the sentence he would receive.  (Tr. 27).  Indeed, Shalley testified that her

practice was to tell her clients that the Court determines their sentence, she "definitely" had a

specific recollection of following this practice with Beltre, and Beltre told Shalley that he

understood it was the Court that would decide his sentence.  (Tr. 27).

       The plea was scheduled for February 24, 2012.  Shalley had Beltre arrive at her

office a few hours before the scheduled time for the plea.  (Tr. 28).  Shalley once again reviewed

the Agreement line-by-line with Beltre (Tr. 29).  Beltre speaks English fluently, but "in an

abundance of caution," Shalley had a paralegal in her office read the Agreement to Beltre in

Spanish.  (Tr. 29).  Shalley's practice is to review a checklist (the "Checklist") with her clients

that provides an outline of questions that the Court is likely to ask the defendant.  (GX 5).  Point

eight of the Checklist indicates that it is the Court that determines the sentence.  (GX 5).  Shalley

reviewed this point with Beltre, and Beltre told Shalley that he understood it. (Tr. 31).

       After reviewing the Checklist with Beltre, Shalley reviewed with him a

handwritten plea allocution that she had prepared.  (Tr. 31-32; GX 6).  Based upon what Beltre

had previously told Shalley, the handwritten allocution stated that Beltre had bought

approximately 112 grams of heroin from a co-conspirator and sold it to another person.  (GX 6).

Beltre said that the correct number was 104, and not 112, grams of heroin, (Tr. 32), so Shalley

changed the number on the handwritten sheet and used 104 grams as the weight in a typewritten

allocution she prepared based upon the handwritten allocution.  (Tr. 33; GX 7).  Finally, when

Beltre left Shalley's office to go to Court, Beltre left his wallet and cell phone, because he knew that he was going to be taken into custody after his plea.  (Tr. 34).

The testimony of Scholar, a former state prosecutor and Shalley's mentee in a CJA Panel mentorship program, was consistent with Shalley's testimony.  He testified that: (1) Beltre told Scholar, on several occasions, that he was involved in sales of heroin involving more than 100 grams of heroin, including transactions with Medina, Bombie, and Compeche, (Tr. 59- 62, 67-68, 87, 89); (2) after the reverse proffer, Beltre told Scholar and Shalley that he wanted to plead guilty, and Shalley and Scholar told Beltre that he would be remanded after he pled guilty, (Tr. 66); (3) when Beltre was shown the plea agreement stating that he conspired to distribute cocaine, he asked instead for an agreement stating that he conspired to distribute heroin, (Tr. 67); (4) the week before Beltre pled guilty, Shalley read the Agreement to Beltre – "every line, every page, line by line," (Tr. 70-71), and Beltre again was told that he would be remanded when he pled guilty, (Tr. 71); (5) on the day Beltre pled guilty, Shalley and Scholar again reviewed the Agreement with Beltre "line by line" and went over the Checklist and a plea allocution, (Tr. 73-74; GX 5, 6); and (6) Beltre corrected Shalley's handwritten allocution to reflect that he had conspired to distribute 104 grams of heroin, and not 112 grams of heroin, (Tr. 75).[1]  Finally, Scholar testified that he never made any promise to Beltre about the sentence that Beltre would receive.  (Tr. 76).

---

[1]Beltre ultimately did not read the typewritten allocution that Shalley prepared.  The typewritten allocution stated, in part: "For instance, in October 2010, I bought approximately 104 grams of heroin from somebody else in the conspiracy and sold that heroin to another person." (GX 7).  In court, the defendant allocuted, in part: "In between 2010 and 2011, I conspired with other people to distribute and sell narcotic[s].  [For] [e]xample, I actually made a phone call to try to buy 104 grams of heroin." (Plea Tr. at 39).

**DISCUSSION**

**A.     The Defendant Has Not Proven That He Is Eligible For Safety-Valve Treatment**

The defendant has not proven that he is eligible for safety-valve treatment.  "In order to award a safety-valve deduction, the District Court must find that an offender has proved, by a preponderance of the evidence, satisfaction of all five safety-valve criteria."  United States v. Nuzzo, 385 F.3d 109, 117 (2d Cir. 2004) (citation omitted).  The defendant has not met the fifth criterion, which provides, in pertinent part, that:

> "[N]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . . "

18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).

During his safety valve proffers with the Government, Beltre admitted that he discussed with Canales the purchase and sale of cocaine and heroin.  Yet, he continued to stand by his Affidavit, including his claim that he never had an agreement to distribute or possess with the intent to distribute 100 grams and more of heroin.  At the conference on February 19, 2012, when the defendant withdrew the Motion, defense counsel appeared to indicate that the defendant again admits, as he did in his plea allocution, that he "actually made a phone call to try to buy 104 grams of heroin."  However, defense counsel appeared to limit the defendant's role to phone calls and appeared to suggest that the defendant did not engage in heroin transactions in the manner that Shalley and Scholar testified.  Shalley and Scholar testified that the defendant told them about actual sales of heroin in which he participated with co-conspirators.  (Tr. 10, 20-21, 38-39, 40, 59-62, 67-68, 87, 89).  An admission to anything less is insufficient; in order to be

eligible for the safety valve, the defendant must provide "all information and evidence" relating

to his drug trafficking with his co-conspirators.  18 U.S.C.

§ 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).

**B.      The Defendant Should Receive An Enhancement For Obstruction Of Justice**

The defendant's offense level should be increased by two levels because he

obstructed justice by filing the Affidavit in support of the Motion.  An enhancement for

obstruction of justice is required when a defendant has "willfully obstructed or impeded, or

attempted to obstruct or impede, the administration of justice with respect to the investigation,

prosecution, or sentencing of the instant offense of conviction."  U.S.S.G. § 3C1.1.  Obstruction

of justice includes "providing materially false information to a judge."  Id., comment. (n.4(F)).

Where the court finds that "the defendant has clearly lied in a statement made under oath, the

court need do nothing more . . .  than point to the obvious lie and find that the defendant

knowingly made a false statement on a material matter."  United States v. Lincecum, 220 F.3d

77, 80 (2d Cir. 2000) (quotation and citation omitted).

The Affidavit states that Beltre never had an agreement to distribute or possess

with the intent to distribute 100 grams and more of heroin.  That statement is directly

contradicted by his own allocution and the testimony of Scholar and Shalley.  The Affidavit

includes several other false statements, including that: (1) on the day of his plea, he went to

Shalley's office, was immediately taken to the courthouse, and was told to enter a guilty plea;

(2) he was given no advance notice of his scheduled plea; (3) Shalley did not tell him that he

would be remanded after he entered his guilty plea; and (4) Shalley told him that his plea "very

likely" would result in a sentence of 18 months' imprisonment.  (Docket Entry No. 168, Ex. B,

¶ 3).

Shalley and Scholar testified that each of these statements was false.  (Tr. 17, 28, 34, 66, 71 (counsel told Beltre he would be remanded upon his plea); Tr. 25, 71 (counsel reviewed the Agreement with Beltre a week prior to the plea); Tr. 27, 76 (counsel made no promises to Beltre about his sentence); Tr. 28 (Beltre arrived at Shalley's office two hours before the plea)).

The false statements in the Affidavit pertained to material matters, because, if believed, they would have tended to influence the Court's determination as to whether the defendant entered a knowing and voluntary plea and whether he received effective assistance of counsel in connection with his guilty plea.  See U.S.S.G. § 3C1.1, comment. (n.6) ("'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.").  Accordingly, the defendant should receive a two-point enhancement for obstruction of justice.  See Lincecum, 220 F.3d at 79 (the defendant submitted a false affidavit causing a suppression hearing to be held, asked for the hearing to be held open so that his brother could testify, and subsequently withdrew the motion without calling the brother to testify).

C.     **The Defendant Should Not Receive A Reduction For Acceptance Of Responsibility**

Beltre's submission of the Affidavit and persistence in having a hearing on the Motion are inconsistent with acceptance of responsibility.  Therefore, the three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 is not warranted.

"A defendant who enters a guilty plea is not automatically entitled to an adjustment for acceptance of responsibility."  United States v. Ortiz, 218 F.3d 107, 108 (2d Cir.

10

2000) (citing  U.S.S.G. § 3E1.1, , comment. (n.3)).  "Although a guilty plea, combined with

truthful statements about the defendant's offense and other relevant conduct, is significant

evidence of acceptance of responsibility, it can be outweighed by conduct that is inconsistent

with acceptance of responsibility."  Id.

        Here, the defendant submitted an Affidavit with multiple false statements and

then subjected his former counsel to direct and cross-examination to test the veracity of the

statements in the Affidavit.  Beltre's decision to withdraw his Motion – after the submission of

the Affidavit and a hearing – does not warrant credit for acceptance of responsibility.  Beltre's

post-plea conduct disavowing guilt is wholly inconsistent with acceptance of responsibility.  See

generally United States v. Bello, 00 CR. 1288 (AKH), 2003 WL 168426, *3 - *4 (S.D.N.Y. Jan.

24, 2003) (commission of a crime post-plea is inconsistent with acceptance of responsibility);

USSG § 3E1.1, comment. (n.4) ("Conduct resulting in an enhancement under § 3C1.1

(Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant

has not accepted responsibility for his criminal conduct.").

**D.**      **The Defendant's Guidelines Calculations**

        The defendant's base offense level is 26, since the defendant conspired to

distribute at least 100 grams but less than 400 grams of heroin.   (PSR ¶ 36).  Two levels should

be added pursuant to Section 3C1.1 of the Guidelines for obstruction of justice.  Accordingly, the

defendant's final offense level is 28.  The parties and the Probation Office agree that the

defendant has no known criminal convictions and, therefore, is in Criminal History Category I.

(Id. ¶ 48.)  The Guidelines range for an offense level of 28 and a Criminal History Category of I

is 78 to 97 months' imprisonment.  The defendant, moreover, is subject to a mandatory minimum

sentence of 60 months' imprisonment, pursuant to Title 21, United States Code, Section 841(b)(1)(B).

### CONCLUSION

For the reasons set forth above and in its initial sentencing submission, the Government respectfully requests that the Court impose a sentence on the defendant within the Guidelines Range of 78 to 97 months' imprisonment, with a mandatory minimum sentence of 60 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Dated:  March 4, 2013
        New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney


By: _____/s/_____
    Alvin Bragg
    Assistant United States Attorney
    Tel.: (212) 637-1085